GONTE *v.* ROSENBERG.

1. BROKERS — COMMISSIONS — FRAUD — EVIDENCE—WEIGHT OF EVIDENCE.

In an action by a real-estate broker for commissions promised in writing to be paid to him for aiding defendants, brokers, in finding a customer for a piece of property listed with them for sale, the finding of the court below that the claim of defendants that they were fraudulently induced to sign said writing as witnesses was not established by a preponderance of the evidence, *held*, justified by the record.

2. SAME—WHEN COMMISSION EARNED—SERVICES.

Although brokers as a rule are only liable to other brokers or agents for an agreed commission if the deal is actually closed, where service only is contracted for and performed there is a consideration irrespective of results.

3. SAME — MAKING CONTRACT AND PERFORMANCE TWO DIFFERENT THINGS.

The merging of dealings or negotiations between parties into a binding contract and the performance of that contract are two different things.

4. CONTRACTS—WHEN DEAL CLOSED.

A bargain is closed when nothing mutual between the parties remains to be done to give to either a right to have it carried into effect; either can enforce it against the other, or recover damages for the nonfulfillment of it.

5. BROKERS—COMMISSIONS EARNED WHEN DEAL CLOSED ALTHOUGH NOT PERFORMED.

When a deal is closed a broker is entitled to his commission, although the parties later abandon the contract and there is no performance.

Error to Wayne; Mandell (Henry A.), J. Sub-

mitted June 7, 1922.    (Docket No. 32.)    Decided December 29, 1922.

Assumpsit in justice's court by Harry Gonte against Barnett Rosenberg and another for commissions on the sale of real estate.   There was judgment for plaintiff, and defendants appealed to the circuit court. Judgment for plaintiff.   Defendants bring error.   Affirmed.

*Daniel J. Alpert* (*Paul J. Wieselberg*, of counsel), for appellants.

*Robert M. Toms*, for appellee.

STEERE, J.   This case was commenced in justice's court where plaintiff recovered a judgment of $400, and defendants appealed it to the Wayne county circuit court where on retrial before the court without a jury plaintiff was given judgment for $420, including $20 interest, and defendants have appealed to this court on various assignments of error, which are argued in their counsel's brief under the following headings:

"*First*. Complete and total failure of consideration for the agreement to pay commission.

"*Second*. The defendants being only brokers, are liable for commissions only if the deal is actually closed.

"*Third*. The verdict was against the weight of the evidence."

Return of the justice before whom the case was first tried shows plaintiff declared in assumpsit on the common counts, to which defendants pleaded the general issue.   Plaintiff's bill of particulars filed in justice's court was:

"To commission earned by plaintiff in procuring a purchaser for the property at the corner of Hastings and Willis streets, Detroit, $400."

Although other writings relating to the subject are spoken of in the testimony, including "Exhibit 2" which does not appear in the record, the only evidence in writing before this court relating to the transaction is Exhibit 1, which is as follows:

"August 6, 1919,—I agree to pay Mr. H. Gonte, $400.00 commission on the deal, property will be closed, corner Hastings and Willis, sold to Mr. Morris Steinberg, from Paul Carowski.

(Signed) "B. ROSENBERG and<br>"SAMUEL KARBEL."

This was offered in evidence by plaintiff and admitted without objection. Thereafter no objection to this document was made by or for defendants during the trial beyond the contention, based on their own evidence, that it was without consideration and obtained by misrepresentation and fraud. When the defense sought to go into those questions plaintiff's counsel objected on the ground that they were affirmative defenses which defendants had waived by pleading the general issue. Defendants' counsel then insisted that he "pleaded that downstairs," but it appearing that the justice had only returned "defendants pleaded the general issue," he asked leave to amend, which the court ultimately granted and defendants were permitted to introduce such testimony upon those subjects as they desired.

The parties to this litigation were, according to their description of their vocations, in the real estate business as agents or brokers. Their testimony as it reads is more or less disjunctive, in parts somewhat confusing and self-contradictory, indicating a limited command of the English language, which is apparently not their mother tongue. Of their antecedents and attainments Rosenberg testified that he had lived in Detroit 17 years, his business was "real estate," he could sign his name but could not write English or

read handwriting but could read printing, and his partner Karbel did not read English. Karbel was silent as to his attainments, his testimony of five lines consisting of an admission that Exhibit 1 contained his signature, the property in question was sold to Steinberg prior to August 5th and Exhibit 1 "was signed a couple of weeks later, on August 6th." Gonte, who called Exhibit 1 a "receipt," testified that his business was "notary public and barber," and at the time of this transaction his "business was real estate," with his "real estate office in the barber shop." His version of the transaction on cross-examination is in part as follows:

"I was the agent in the deal with Carowski. Carowski was the owner of the property. I was over with Carowski—I talked to him about selling the property. Rosenberg and Karbel were to pay me commission for the sale of this property. They were the agents. They came to me and said: 'I got a buyer, I should give him a seller.' And I went over to the seller to make the sale of the property. I did not bring Steinberg to them—I talked to Carowski. I brought the seller. They were to pay me commission because I gave them the seller. They didn't notify me when the deal was closed. They got commission, $1,000. I am positive about that. * * * I was in it between Carowski and Steinberg and then after Steinberg made the $500 deposit, he was supposed to back out. And they told me I got to get another customer so that he will close the deal. * * * The first time they came over to me, they told me if I would get them a customer from Steinberg to Carowski, to buy the property, they would pay me a commission if they got a deposit from Steinberg to Carowski. They came over to me and they told me that there would not be a deal until I give them another customer from Steinberg. Until I give them another customer that shows Steinberg that he could prove he could get what he paid for it. And that is why I would not trust them, I told them I wanted a receipt, otherwise I would not work on it. So, after they give me the receipt, I went to work. * * * I wasn't there when Mr. Stein-

berg gave a deposit on the property. They didn't tell me anything. I wasn't present when the receipt was made out."

The task of securing a purchaser from Steinberg upon which plaintiff went to work after defendants signed Exhibit 1, or gave him the "receipt," as he states it, resulted in his producing a couple of men as prospective purchasers who made some kind of a bargain with Steinberg for purchase of the property, the terms of which are not disclosed but apparently then satisfactory to him as he accepted a deposit of $300 and testified:

"This man brought me customers that I could make a couple of thousand dollars with a small payment down, in order that I should sell it again."

For some undisclosed reason this deal was not carried out, as he says, "I gave back the parties $300. They wanted the money and I gave it to them," but his deal with Carowski did not fall through. He stated of it:

"I had only paid $500 down on the property. I was not going to lose the property. I had money in the bank, why should I lose it? I knew Carowski. He was a brother in my lodge."

Defendants contend that the "deal" mentioned in Exhibit 1 had reference to that between Steinberg and the customers plaintiff produced, which was not "closed," instead of to the sale from Carowski to Steinberg, and that plaintiff falsely read them Exhibit 1, to the effect that Steinberg would give him a commission, fraudulently persuading them to sign it as witnesses. Rosenberg's version of their signing Exhibit 1, with introductory assertion and denial, is in part as follows:

"I sold the property from Carowski to Steinberg. I am still claiming the commission, and have com-

menced the suit for one thousand fifty dollars ($1,050). I don't owe Gonte a cent. Mr. Karbel does not read English. He asked me when I signed, 'Rosenberg, do you think it is all right?' And I said, 'The man read it for me, I cannot see any swindle in it the way that he read it.' He read for me that if he was to sell this property from Mr. Steinberg to Mr. Gimbel and to Mr. Wolach. Where I didn't even know the men, Mr. Steinberg has got to give him a commission. I said 'What have I got to do with it?' I signed at Steinberg's house. Nobody else but me, Steinberg, Mrs. Steinberg, Mr. Gonte and Mr. Karbel were there. Steinberg refused to sign the paper. He said, 'If you will make the deal, you will get the commission.' And Mr. Karbel says to Mr. Steinberg, 'you are in the real estate business. You pay me commission.'"

The trial court, who had the advantage of seeing and hearing all the witnesses, referred to defendants as "two bright men," and, commenting on the improbability of their being "fooled" into signing Exhibit 1 as witnesses, held their claim of fraud in that particular was not established against plaintiff's testimony by a preponderance of evidence. The story that these real estate agents were deceived into signing as witnesses a paper showing Steinberg's obligation to pay a commission, which he had just refused to sign, in itself heavily taxes credulity under the circumstances of this case. We are not disposed to question the court's findings on that issue.

The question of want of consideration goes with defendants' claim that the agreed commission was not earned because the second deal between Steinberg and Gimbel and Wolach, whom plaintiff produced as purchasers, was not closed. Defendants' counsel cites unquestioned authorities to the effect that brokers are only liable to other brokers or agents for an agreed commission if the deal is actually closed. Unquestionably the commission is not earned unless the desired result contracted for is accomplished. If service only

is contracted for and performed there is a consideration irrespective of results.

The merging of dealings or negotiations between parties into a binding contract and the performance of that contract are two different things. Both parties recognize the deal between Carowski and Steinberg was "closed;" and there is considerable testimony tending to show the deal between Steinberg and the customers plaintiff produced was also closed, although it was apparently abandoned by mutual consent. Steinberg received from them in that transaction a payment of $300, which he says he voluntarily returned because they asked him to, and plaintiff testified without contradiction: "I haven't the agreement between Steinberg, Gimbel and Wolach. They took the deposit back, and they took the agreement back." What the agreement was does not appear, but an agreement generally indicates the closing of a bargain. In *Mactier* v. *Frith*, 6 Wend. (N. Y.) 103, 115 (21 Am. Dec. 262), the court said:

"What I mean by its (the bargain) being closed is, that nothing mutual between the parties remains to be done to give to either a right to have it carried into effect; either can enforce it against the other, or recover damages for the nonfulfillment of it."

But plaintiff's claim and testimony are that the agreement, of which Exhibit 1 is a memorandum, was from the beginning that defendants would pay him $400 for his services in aiding them to successfully negotiate and close a sale of this property from Carowski to Steinberg, and his efforts at their solicitation to find a customer for Steinberg were to make certain and close the Carowski-Steinberg deal. The testimony of the parties was in direct conflict on material issues as to which it is manifest certain witnesses were intentionally testifying untruthfully. With a class

of witnesses testifying in the manner this record discloses, to hear, observe them as they testify and note their manner of testifying gives more than ordinary advantage in passing on their credibility. There is testimony to support the findings of the trial court, and we are not prepared to hold his findings of fact are against the weight of the evidence.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.